Defendant has moved to dismiss plaintiff's appeal, pursuant to Rule 70l (2), (3) and (4) of the North Carolina Workers' Compensation Rules, due to plaintiff's failure to file a Form 44 or brief in support of his appeal. Pursuant to Rule 801, in the interest of justice and noting plaintiff's pro se status, the undersigned DENY defendant's motion and will proceed to review plaintiff's appeal on the merits.
Therefore, the undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
Upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing as
 STIPULATIONS
1. On the date of plaintiff's claimed injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. A set of plaintiff's medical records, marked as Stipulated Exhibit Number One, is admitted into evidence.
4. Plaintiff's recorded statement, marked as Stipulated Exhibit Number Two, is admitted into evidence.
5. A letter from MetLife to defendant's counsel, marked as Stipulated Exhibit Number Three, is admitted into evidence.
6. A Physical Examination Form, marked as Stipulated Exhibit Number Four, is admitted into evidence.
7. Wage records produced by defendant, marked as Stipulated Exhibit Number Five, are admitted into evidence.
***********
Based upon all of the competent, credible, and convincing evidence of record, the undersigned make the following additional
 FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was thirty-one years old. He had graduated from high school. He was enlisted in the United States Marine Corp. for five years, where he served as an ammunition technician. His employment history also included work as a pizza cook and as a long haul truck driver.
2. Plaintiff became employed by defendant as a tractor trailer driver on March 6 1995. His driving duties required him to drive up to ten hours per day. The truck he drove was a tanker truck. He was not required to unload or load the truck. While driving, plaintiff routinely sat with his left leg fully extended and his left foot resting flat on the firewall between the driver's seat and the engine compartment.
3. Plaintiff stated that on July 5, 1997, he was driving on a four lane divided highway in the right hand lane. He was seated in his usual position, with his left leg extended and his left foot against the firewall. As he rounded a curve in the road, he saw a car that was stopped or stalled in his lane of travel. To avoid a collision with the car, it was necessary for him to change lanes. To see whether he could safely change to the left lane of travel, with his left leg still extended, he leaned forward and looked out of the driver's window. He was able to safely change lanes and avoid a collision, but the incident caused an adrenaline rush. He further stated that he did not experience any pain or other symptoms at the time of this incident; but by the time he arrived at his destination, he felt some discomfort in his left hip area. Plaintiff did not report this asserted incident to defendant.
4. Plaintiff continued working as usual following the claimed incident on July 5, 1997. On August 1, 1997, he presented to an urgent care facility. He was experiencing pain across his lower back. With straight leg raising, he had pain in his left sacroiliac area, without radiation. His reflexes were equal. An x-ray of his left hip revealed no abnormality. Plaintiff received prescriptions for Advil, directions for back exercises, and a recommendation to return for re-evaluation as needed. Plaintiff returned to the urgent care facility October 6, 1997. On that date, he reported that his pain had returned. He had pain across his lower back that radiated into his left hip. Straight leg raising was positive at eighty degrees on the left and at ninety degrees on the right. His reflexes were equal and reactive. Plaintiff received prescriptions for additional medications. The office notes from these two examinations do not reveal that plaintiff reported that his symptoms began on July 5, 1997.
5. Plaintiff continued working in his usual position through November 11, 1997. On that date, plaintiff planned to prepare chili in a CrocPot during his work shift. Before leaving, he gathered the ingredients for the chili. He stopped or squatted to obtain some onions. When he did so, he was immediately "gripped" with pain. He was unable to work as scheduled. Plaintiff reported to defendant that he was unable to work due to a back injury. He informed his supervisor, Mr. Perryman, that his injury was caused by riding in his truck. Plaintiff did not report an incident occurring on or about July 5, 1997.
6. The next day he presented to Dr. Belford, complaining that his low back pain had worsened and radiated into his hip. His straight leg raising was positive on the left at forty-five degrees, and on the right it was positive at fifty-five degrees. He also had positive "bowstring". Dr. Belford prescribed Flexeril, Percocet and Anaprox. Plaintiff's symptoms were caused by a herniated disc at L5-51.
7. On November 13, 1997, plaintiff was evaluated by a physician's assistant at Occupational Health Services. On that date, he was experiencing left lower back pain with radiation down his left leg to the knee. Plaintiff reported that he was a tractor trailer driver and that he habitually drove with his left foot pressed upward on the firewall. He stated that three days earlier, he began experiencing back pain while pushing his left foot against the truck's foot pedals. He denied any precipitating incident.
8. On November 20, 1997, plaintiff discussed his claim with a claims adjuster during a recorded telephone conversation. During this conversation, the adjuster asked whether plaintiff knew the day and date his injury occurred. Plaintiff responded that he could not identify the day and date with certainty that, it (the pain or symptoms) "started over a period of time". He was asked, "What do you think caused it?". He responded, "While driving the truck, I would assume a posture where I would place my left foot on the firewall of the truck, giving myself support and it felt like a pretty good position but over time it proved to be not so very good."
9. Plaintiff continued receiving conservative treatment until December 8, 1997, when he came under the care of Dr. Rodger, an orthopedic surgeon. On that date, plaintiff reported that he was a tractor trailer driver and that he regularly drove from Wilmington to Charlotte, a trip of approximately ten hours. He described an aching sensation that began in his hip months earlier. He also described his habit of driving with his left leg extended and his left foot resting against the firewall. He stated that driving in this position might have aggravated his symptoms. He also described the incident when he bent over to pick up onions. He described this incident as aggravating his prior symptoms. He did not report any incident occurring while driving on July 5, 1997.
10. On December 19, 1997, plaintiff underwent surgery, during which Dr. Rodger performed a microdiscectomy at L5-S1. As a result of his herniated disc, plaintiff worked in a light duty capacity from November 12, 1997 through November 29, 1997. As a result of his herniated disc, plaintiff was excused from work and incapable of earning wages from any employer from November 30, 1997 through February 4, 1998.
11. On February 2, 1998, Dr. Rodger released plaintiff to return to work without restrictions beginning February 3, 1998. After reviewing his records, Dr. Rodger noted that plaintiff "felt it was an injury that occurred at work due to repetitively keeping his foot up on the fire wall [sic] while driving initially causing his back to give him trouble. Then an acute exacerbation occurred when he bent over in late 1997."
12. Plaintiff returned to work for defendant in his usual position on February 5, 1998. At that time, plaintiff was experiencing significant relief from his back and leg pain. Plaintiff continued working in his usual position, earning his usual wages, until August 8, 1998. However, during the period from February through August 1998, plaintiff's condition worsened and, by August 9, 1998, his symptoms were sufficiently severe as to render him incapable of working as a tractor trailer driver.
13. Plaintiff returned to work as a security guard for Coastal Carolina Community College on September 16, 1998. Plaintiff was capable of working as a security guard for forty hours per week; however, he elected not to pursue full-time employment. Instead, he enrolled in a two year nursing program offered by Coastal Carolina Community College. Since plaintiff declined full-time employment in favor of enrollment in college, his earnings in his part-time position are not indicative of his actual earning capacity.
14. Considering the history plaintiff gave to his health care providers, the statements made to the claims adjuster, his reports that his back condition occurred over time due to his driving posture and his failure to report to defendant an incident occurring on or about July 5, 1997, the undersigned does not accept as credible or convincing plaintiff's accounting of any asserted incident on July 5, 1997.
15. The competent, credible, and convincing evidence of record is insufficient to prove by its greater weight that plaintiff's herniated disc was caused by an unusual, unexpected, or traumatic incident occurring during his performance of his regular work routine.
***********
The foregoing findings of fact and conclusions of law, the undersigned enter the following
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to no compensation under the North Carolina Workers' Compensation Act.
***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs.
This case is ORDERED REMOVED from the Full Commission hearing docket.
This the ___ day of ________, 1999.
S/____________ J. HOWARD BUNN, JR. . CHAIRMAN
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER
JHB:kws